# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CHRISTOPHER-MICHAEL
WILLIAMS,

      Plaintiff,

vs.

ANNETTE CHAMBERS-SMITH, *et al.*,

      Defendants.

: Case No. 2:26-cv-259

:

: District Judge Michael H. Watson

: Magistrate Judge Caroline H. Gentry

:

:

:

:

:

:

:

---

## ORDER AND REPORT AND RECOMMENDATION

---

Plaintiff Christopher-Michael Williams, an Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights lawsuit against Defendants Annette Chambers-Smith, Michael Davis, Alford Harvester Marcus, Jennifer Haywood, K. Morrow, and Corby Free. (Complaint, Doc. 10). Plaintiff sues Defendants in their individual capacities for monetary damages and in their official capacities for declaratory and injunctive relief. (*Id.* at PageID 170-71). By separate order Plaintiff was granted to leave to proceed *in forma pauperis*. (Doc. 9).

This matter is before the undersigned Magistrate Judge to conduct the required initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). This matter is also before the undersigned to issue a Report and Recommendation on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. (Motion for TRO/PI, Doc. 3). For the reasons set forth below, the undersigned **ORDERS** that Plaintiff be permitted to **PROCEED** with certain claims in the Complaint and **RECOMMENDS** that the District Judge **DISMISS** Plaintiff's remaining claims, **DENY** Plaintiff's Motion for Temporary Restraining Order and **HOLD IN ABEYANCE** Plaintiff's Motion for a Preliminary Injunction.

I.      LEGAL STANDARDS

A.      **Requirement To Screen Plaintiff's Amended Complaint**

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners").

B.      **Determining That a Complaint Is Frivolous**

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of being irrational or 'wholly incredible.'"  *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009).

2

**C.** **Determining That a Complaint Fails to State a Claim Upon Which Relief May Be Granted**

The Court is required to dismiss complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1). To avoid dismissal under this standard, the Complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the Complaint in Plaintiff's favor, accept all well-pleaded factual allegations as true, and determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under §§ 1915A(b)(1) and 1915(e)(20(B)(ii)"). Thus, the Complaint must include factual allegations that are both ***well-pleaded*** and ***plausible***.

Factual allegations are well-pleaded if they are specific and support the plaintiff's claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept "non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations . . . that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009); *see Flagstar Bank*, 727 F.3d at 504 (internal quotations and

3

citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678.

In addition, a "complaint must contain either direct or inferential allegations respecting all the material elements" of a claim "to sustain a recovery under *some* viable legal theory." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis in original).

### D. Liberal Construction of *Pro Se* Complaints

Plaintiff is representing himself *pro se* – that is, without the assistance of counsel. This Court is required to liberally construe a *pro se* complaint and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in order] to construe a *pro se* petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must adhere to the "basic pleading essentials" and the Court should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

The following statement of facts is taken from the Complaint (Doc. 10). As it is required to do, the Court accepts as true all well-pleaded and plausible factual allegations (but not legal allegations) in the Complaint for purposes of conducting this initial screen.

Plaintiff alleges that Defendants have violated his constitutional rights as an interdenominational Jewish inmate, "practicing the Jewish principals of the Torah as a Hebrew Israelite," which is a religious affiliation that Plaintiff declared in 2021.  (Complaint, Doc. 10, PageID 171).  Plaintiff alleges that Defendant Chambers-Smith, Director for the Ohio Department of Rehabilitation and Correction ("ODRC"), has authorized an unconstitutional policy that "discriminates against all inmates who do not have a Rabbi's endorsement and establishes a religion by showing favoritism towards a sect of the Jewish religion."  (*Id.* (citing Exhibit 1, Doc. 10-1, PageID 197-203)).  Plaintiff alleges that Defendant Chambers-Smith "institute[d] a clergy-as-arbiter-of-orthodoxy standard" that enables Defendants to violate his constitutional rights, under the United States and Ohio Constitutions, by denying his request for daily kosher meals.  (*Id.* at PageID 172).  Plaintiff alleges that requiring a "clergy verification" burdens his religious practice and the denial was based on purposeful discrimination.  (*Id.*).

Plaintiff made a new Religious Accommodations request on June 23, 2025.  (Complaint, Doc. 10, PageID 174 (citing Exhibit 3, Docs. 10-3 and 10-4 (Part 2))).  Defendant Marcus, Chaplain at Chillicothe Correctional Institution ("CCI"), permitted Plaintiff to participate in Jewish holidays and to receive kosher meals during Passover.  (*Id.* at PageID 173).  However, Defendant Marcus failed to approve his daily kosher meal request.  (*Id.*).  Defendant Marcus required Plaintiff to submit a superfluous "Request for Religious Accommodation" form, which Plaintiff alleges is only necessary "for the approval of religious practices and beliefs ***not*** currently approved by" ODRC's policies.  (*Id.*).  Even though he believed it to be unnecessary because ODRC policy addresses kosher meals, Plaintiff submitted the form.  (*Id.*).  Plaintiff alleges that Defendant Marcus could have approved the request but chose not to do so, which discriminated against him.  (*Id.*).  Plaintiff also alleges that the policy discriminated against him

5

because Plaintiff did not have a Rabbi to endorse him as a Jewish faith practitioner, which allowed Defendants to treat him differently than other Jewish inmates. (*Id.* at PageID 172-73).

Plaintiff also challenges Defendant Marcus's failure to approve his work proscription requests to observe Sabbath during Jewish holidays. (Complaint, Doc. 10, PageID 184). Plaintiff alleges that this denial was "anti-Semitic conduct against a Jewish practitioner who is without Rabbi Endorsement." (*Id.*). Plaintiff also asserts that Defendant Marcus denied his work proscription requests to retaliate against him for challenging the denial of his request for kosher meals. (*Id.*).

Plaintiff alleges that Defendant Haywood, Deputy Warden of Special Service at CCI, failed to approve his kosher meal request in Haywood's role as "final arbiter over the Religious Accommodation Review Committee." (Complaint, Doc. 10, PageID 170, 174, 178). He alleges that Defendant Haywood merely followed Defendant Marcus's recommendation to deny the request rather than conducting her own review. (*Id.* at PageID 174, 178). He also alleges that Defendant Haywood conspired to deny Plaintiff his First Amendment rights when Haywood "intentionally and purposefully failed to hold Marcus accountable for policy violations" that Plaintiff raised in a grievance. (*Id.* at PageID 175, 181). Plaintiff further alleges that Defendant Haywood did not respond to his grievances about the denial. (*Id.* at PageID 181).

Plaintiff alleges that Defendant Corby Free, Institutional Inspector at CCI, ignored the fact that his religious affiliation declaration was on file and incorrectly determined that the ODRC policy did not apply to Plaintiff. (Complaint, Doc. 10, PageID 171, 181-82, 186). Plaintiff alleges that Defendant Free intentionally failed to inform Defendants Marcus and Haywood about Plaintiff's religious affiliation declaration. (*Id.* at PageID 181-82, 186). He also alleges that Defendant Morrow, the Assistant Chief Inspector, "intentionally turned a blind eye"

6

to Defendant Free's decision despite Plaintiff's religious declaration.  (*Id.* at PageID 170, 176, 187).

Plaintiff alleges that Defendant Davis, Religious Services Administrator with ODRC, failed to correct the policy and "turned a blind eye to the intentional deprivation" of his rights. (Complaint, Doc. 10, PageID 170, 176).  He alleges that Defendant Davis has "fostered a custom . . . of denying inmates the right to practice their Jewish religion, which inherently requires keeping kosher."  (*Id.* at PageID 177).  Plaintiff alleges that this custom exists "under the guise" of determining whether his religious belief is sincere.  (*Id.*).  As an example, Plaintiff alleges that he previously requested a kosher meal accommodation in 2022, and that his request was denied because the chaplain "could not clearly determine [Plaintiff's] religious sincerity." (*Id.* at PageID 174).  Plaintiff appealed the denial to Defendant Davis, who used his authority as the Religious Service Advisor to overrule Plaintiff's objections and denied the appeal for the same reason on April 4, 2024.  (*Id.* at PageID 174, 177).

Plaintiff alleges that ODRC policy 72-REG-07(VI)(A), which was authorized by Defendant Chambers-Smith and has been enforced by the other Defendants, discriminates against inmates who do not have a Rabbi's endorsement.  (Complaint, Doc. 10, PageID 172, 175).  He alleges that Defendants denied his First Amendment right to freely practice his religion and his Fourteenth Amendment right to equal protection, as their conduct lacks a legitimate penological interest.  (*Id.* at PageID 188-91).  Plaintiff alleges that Defendants have conspired against him.  (*Id.* at PageID 191-92).  Plaintiff alleges that Defendants' actions violated the Eighth Amendment because "Defendants were deliberately indifferent to an excessive risk" of Plaintiff having to choose between following his religious beliefs or being malnourished.  (*Id.* at PageID 192-93).  Finally, Plaintiff alleges that Defendants' actions violated his "right to worship

7

Yahweh according to the dictates of his own conscience" under Article I, § 7 of Ohio's

Constitution.  (*Id.* at PageID 193-95).  Plaintiff seeks monetary, declaratory, and injunctive

relief.  (*Id.* at PageID 196).

### III.    PLAINTIFF'S CLAIMS

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983, which authorizes a

cause of action "against any person who, under color of state law, 'subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution.'"  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To

state a claim under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by

the Constitution or laws of the United States (2) caused by a person acting under color of state

law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

The undersigned construes the Complaint as asserting the following claims:

1.  First Amendment claims against all Defendants for allegedly violating Plaintiff's right to the free exercise of religion by denying his daily kosher meal request.

2.  First Amendment claims against all Defendants for allegedly violating the Establishment Clause by creating and enforcing a religious policy that favors certain inmates, creating an excessive entanglement between church and state.

3.  Fourteenth Amendment Equal Protection claims under a class of one theory against all Defendants for allegedly treating Plaintiff differently than other similarly situated interdenominational Jewish inmates without a legitimate penological interest because he does not have a Rabbi to confirm his sincerely held beliefs.

4.  First Amendment retaliation claims against Defendant Marcus for denying Plaintiff's religious work proscription requests in retaliation for Plaintiff challenging Marcus' role in denying the daily kosher meal request.

5.  Civil conspiracy claims under 42 U.S.C. § 1983 against all Defendants for allegedly engaging in a single plan to violate Plaintiff's First Amendment rights by denying his request for daily kosher meals.

8

6. Eighth Amendment claims against all Defendants for their alleged deliberate indifference to the excessive risk to Plaintiff's health in denying his kosher meal request, which would require him to violate his religion or to go without eating.

7. Supervisory liability claims under 42 U.S.C. § 1983 against Defendants Haywood, Free, Davis, and Morrow.

8. Ohio state-law claims under Article 1, § 7 of the Ohio Constitution against all Defendants for allegedly violating Plaintiff's rights of conscience, education, and the necessity of religion and knowledge when they denied his daily kosher meal request.

## IV.    LAW AND ANALYSIS

As an initial matter, Plaintiff alleges that he first made a kosher meal request in 2022, which Defendant Marcus denied.  (Complaint, Doc. 10, PageID 174, 182).  Plaintiff alleges that Defendant Davis upheld the denial on April 4, 2024.  (*Id.* at PageID 174, 177).  Plaintiff appears to have raised claims regarding this 2022 request in a prior lawsuit against Defendants Davis, Marcus, and Free.  *See* Case No. 2:23-cv-1042 (S.D. Ohio) (Graham, D.J.; Jolson, M.J.).  The undersigned therefore construes Plaintiff's Complaint as being based on the new request made on June 23, 2025, and relying on Plaintiff's 2022 request as an example of the discriminatory custom that Defendants allegedly created.  (*See* Doc. 10, PageID 177).

At this stage of the proceedings, and without the benefit of further briefing, the undersigned concludes that Plaintiff's First Amendment free exercise and establishment of religion claims, his Fourteenth Amendment Equal Protection claims, and his Eighth Amendment claims against all Defendants may **PROCEED** for further development.  Plaintiff's retaliation claims against Defendant Marcus, as well as his supervisory liability claims against Defendants Haywood, Free, Davis, and Morrow, may also **PROCEED** for further development.  Plaintiff's state-law claims against all Defendants for alleged violations of the Ohio Constitution may also **PROCEED** for further development.  The undersigned cautions Plaintiff that no determination

9

has been made regarding the merits of these claims or any defenses to them, nor are Defendants precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g.*, *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020). The Court is simply concluding that these claims may proceed to further development at this time.

Additionally, the undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED** for the reasons set forth below.

### A.     All Official Capacity Claims for Damages Should Be Dismissed With Prejudice.

Plaintiff has sued all Defendants in their individual and official capacities and seeks to recover both monetary damages and declaratory and injunctive relief. The Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages. Therefore, Plaintiff's official capacity claims should be dismissed with prejudice to the extent that they seek to recover damages.

Absent an express waiver, states are immune from lawsuits seeking damages under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). Therefore, if Plaintiff had sued the State of Ohio, his claims would be barred by the Eleventh Amendment.

Plaintiff cannot avoid this result by suing officials and employees of the State of Ohio. The Eleventh Amendment bar extends to actions where the State is not named as a defendant, but the actions essentially seek the recovery of money from the State. *Edelman*, 415 U.S. at 663.

10

It is well-established that a claim against an individual defendant in his official capacity is actually a claim against the entity that employs him. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent . . .. [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotations and citations omitted).  Therefore, actions against State officials in their official capacities for money damages are barred by the Eleventh Amendment. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)).  This doctrine applies squarely here.

In sum, the Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages.  Accordingly, the undersigned **RECOMMENDS** that Plaintiff's official capacity claims be **DISMISSED with prejudice** to the extent that they seek to recover damages.

### B.     All Conspiracy Claims Should Be Dismissed Without Prejudice.

Plaintiff's assertion that Defendants have engaged in a civil conspiracy fails to state a plausible claim for relief.  To state a claim of civil conspiracy in violation of 42 U.S.C. § 1983, a plaintiff must plead that there is "an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  A plaintiff must plead and prove that a "'single plan' existed," the alleged co-conspirator "shared in the general conspiratorial objective," and that an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks*, 771 F.2d at 943-44).  Additionally, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to

11

state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (finding that a conspiracy claim lacked the requisite specificity when the plaintiff "repeatedly recast[ed] that allegation as different constitutional violations").

Plaintiff alleges generally that Defendants engaged in a "single plan" to deny his right to the free exercise of religion by denying his request for daily kosher meals.  (Complaint, Doc. 10, PageID 191-92).  Plaintiff also alleges that Defendants conspired to create and enforce an ODRC policy that violates the Free Exercise Clause, and to discriminate against him in violation of his equal protection rights.  However, Plaintiff fails to allege sufficient facts with specificity, as is required to plead the elements of a conspiracy claim.  *See Fieger*, 524 F.3d at 776 (quoting *Gutierrez*, 826 F.2d at 1538) (requiring some degree of specificity to state a plausible conspiracy claim).  Because Plaintiff's allegations that Defendants conspired against him are too speculative and conclusory to state a plausible claim for relief under Section 1983, these claims should be **DISMISSED without prejudice**.  *See Moldowan*, 578 F.3d at 395.

## IV.     PLAINTIFF'S MOTION FOR TRO/PI

Plaintiff seeks a temporary restraining order ("TRO") and preliminary injunction to enjoin Defendants from enforcing the challenged ODRC policies.  (Doc. 3, PageID 96-98).  He also seeks an injunction that grants him entry into the Kosher Meal Program.  (*Id.*).  For the reasons set forth below, the undersigned recommends that Plaintiff's motion for a temporary restraining order be denied and his motion for a preliminary injunction be held in abeyance until Defendants have been served with and responded to the Complaint and the Motion for TRO/PI.

12

### A. Applicable Legal Standard.

Rule 65 of the Federal Rules of Civil Procedure authorizes the award of preliminary injunctive relief in the form of a temporary restraining order (TRO) or preliminary injunction.[1] The purpose of both forms of preliminary injunctive relief is to "preserve the relative positions of the parties until a trial on the merits can be held." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025) (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024)).  By preserving the status quo, a preliminary injunction "thus preserves the court's power to issue meaningful final relief once the parties have litigated the merits to a final decision." *Id*. at 884.  Because the court uses informal procedures to grant such relief and considers evidence that "is less complete than in a trial on the merits," an award of preliminary injunctive relief "is the exception, rather than the rule." *Id*. (internal quotations and citations omitted); *accord Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (holding that a preliminary injunction "is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.").

When considering whether to award a TRO or preliminary injunction, the Court balances four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Ret. Emps. Ass'n v. Schimmel*,

---

[1] Although both awards provide preliminary injunctive relief, there are important differences.  A TRO can be in effect for a maximum of 14 (or occasionally 28) days.  It is awarded based solely on the plaintiff's motion, evidence, and arguments, without waiting for a response from the defendant.  A plaintiff seeking a TRO must "certif[y] in writing any efforts made to give notice [of the motion for TRO to the defendant] and the reasons why it should not be required." Fed. R. Civ. P. 65(b).  And because only extraordinary circumstances can justify an award of preliminary injunctive relief before the defendant can respond, the plaintiff must clearly show that he will be immediately and irreparably harmed if a TRO is not issued.

751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotations and citation omitted).

Significantly, the Court **must** find that irreparable injury exists before it awards preliminary

injunctive relief. *EOG Res., Inc.*, 134 F.4th at 883 ("It's true that courts 'balance' the four

factors, but while 'the *extent* of an injury may be balanced against other factors, the *existence* of

an irreparable injury is mandatory.'") (emphasis in original, citation omitted).

The first factor requires the movant to demonstrate, at a minimum, "serious questions

going to the merits." *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal

quotations and citation omitted). This factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater
> importance than the remaining three. *See Roth v. Bank of the Commonwealth*,
> 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when
> the proponent of the injunctive relief has no chance of success on the merits of the
> claim, the Court may dismiss the motion without considering the other three
> factors. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.
> 1997). Failure to do so is reversible error. *See id.*; *Sandison v. Michigan H.S.
> Athletic Ass'n*, 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2-02-178, 2002 WL 31409435, at *3 (S.D. Ohio

Aug. 13, 2002) (denying motion for injunctive relief after evaluating only the first factor); *see

also City of Pontiac Ret. Emps. Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary

injunction on the basis of a potential constitutional violation, the likelihood of success on the

merits often will be the determinative factor.").

In addition, the Prison Litigation Reform Act ("PLRA") requires courts to comply with

certain conditions before awarding preliminary injunctive relief against prison officials:

> In any civil action with respect to prison conditions …. [p]reliminary injunctive
> relief must be narrowly drawn, extend no further than necessary to correct the
> harm the court finds requires preliminary relief, and be the least intrusive means
> necessary to correct that harm. The court shall give substantial weight to any
> adverse impact on public safety or the operation of a criminal justice system

14

caused by the preliminary relief and shall respect the principles of comity set out in [18 U.S.C. § 3626(a)(1)(B)][2] in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).  Any award of preliminary injunctive relief shall automatically expire after 90 days "unless the court makes the findings required under [18 U.S.C. § 3626(a)(1)][3] for the entry of prospective relief and makes the order final before the expiration of the 90-day period."  *Id*.

## B.  Analysis.

For several reasons, the undersigned recommends that Plaintiff's motion for a temporary restraining order be denied.

As an initial matter, Plaintiff did not "certif[y] in writing any efforts made to give notice and the reasons why it should not be required," as mandated by Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure.  Thus, the Court is not permitted to issue a TRO without notice to Defendants.  Fed. R. Civ. P. 65(b)(1).

Also, Plaintiff is seeking to alter rather than preserve the status quo, which does not serve the traditional purposes of preliminary injunctive relief.  *EOG Res., Inc.*, 134 F.4th at 883-85.

Next, Plaintiff has not demonstrated that he will suffer immediate and irreparable harm absent a TRO that orders Defendants to provide him with daily kosher meals.  Plaintiff alleges

---

[2] 18 U.S.C. § 3626(a)(1)(B) provides: "The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless— (i) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right."

[3] 18 U.S.C. § 3626(a)(1) provides: "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

that "Defendants' conduct has caused [him] to become an outcast or misfit from his religion for not eating kosher meals and keeping kosher as required by his religion." (Complaint, Doc. 10, PageID 187). However, it appears that Defendant Marcus **has** approved Plaintiff's request to receive kosher meals during Passover. (*Id*. at PageID 174, 183; Exhibit 5, Doc. 10-6, PageID 232-34). Further, ODRC offers vegan or vegetarian meals that Plaintiff could request during the pendency of the litigation. *See Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. 2015)) (noting that Ohio prisons offer vegetarian meals when considering a Muslim inmate's claim of being denied Halal meals). While Plaintiff alleges in conclusory fashion that the vegan meal option is insufficient (Complaint, Doc. 10, PageID 177, 185), he provides no further explanation as to the acceptability of vegan or vegetarian meals as a temporary alternative to kosher meals. (*See generally id.*; Motion for TRO/PI, Doc. 3). And as explained in Plaintiff's attachment to his kosher meal request, it appears that the ODRC kosher meals are not prepared wholly within the requirements of the Family of Yahweh but are the "closest thing to clean in the eyes of Yahweh." (Exhibit 3 Part 2, Doc. 10-4, PageID 222). Without further information about this issue, the undersigned concludes that Plaintiff has not met his burden of showing that he will be immediately and irreparably harmed unless provided with daily kosher meals.

Similarly, Plaintiff has not shown that he has a strong likelihood of success on the merits. While inmates have a "constitutional right to meals that meet their nutritional needs" and to "meals that do not violate their sincerely-held religious beliefs," the Sixth Circuit has also held that "there is no constitutional right for each prisoner to be served the specific foods he desires." *Robinson*, 615 F. App'x at 314 (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir.2010); *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir.1999) ("holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and 'the fact that

16

Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient'")); *see also Tolliver v. ODRC*, No. 2:16-cv-1020, Doc. No. 61 at PageID 468-69 (S.D. Ohio June 21, 2019) (Jolson, M.J.), *report and recommendation adopted by* Doc. No. 67, PageID 490-91 (S.D. Ohio July 17, 2019) (Smith, D.J.) (collecting and citing cases).

Finally, the Court has insufficient information to make the findings required by the PLRA when awarding a TRO. The facts alleged in the Complaint and averred in Plaintiff's Motion for TRO/PI do not allow this Court to find that an order requiring Defendants to provide daily kosher meals would be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Court also has no evidence before it that allows it to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id*. Similarly, the Court has no evidence before it that enables it to "respect the principles of comity set out in" 18 U.S.C. § 3626(a)(1)(B).

For all of these reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for a temporary restraining order (Doc. 3) be **DENIED**. Because evidence provided by Defendants may permit the Court to rule on the foregoing issues, the undersigned **RECOMMENDS** that the Court **HOLD IN ABEYANCE** Plaintiff's motion for a preliminary injunction (Doc. 3) until Defendants have been served and responded to the Complaint and the Motion for TRO/PI.

## V. CONCLUSION

For the reasons set forth above, the undersigned Magistrate Judge **ORDERS** that Plaintiff be permitted to **PROCEED** at this time with the following claims:

1. First Amendment claims against all Defendants for allegedly violating Plaintiff's right to the free exercise of religion by denying his daily kosher meal request.

17

2. First Amendment claims against all Defendants for allegedly violating the Establishment Clause by creating and enforcing a religious policy that favors certain inmates, creating an excessive entanglement between church and state.

3. Fourteenth Amendment Equal Protection claims under a class of one theory against all Defendants for allegedly treating Plaintiff differently than other similarly situated interdenominational Jewish inmates without a legitimate penological interest because he does not have a Rabbi to confirm his sincerely held beliefs.

4. First Amendment retaliation claims against Defendant Marcus for denying Plaintiff's religious work proscription requests in retaliation for Plaintiff challenging Marcus' role in denying the daily kosher meal request.

5. Eighth Amendment claims against all Defendants for their alleged deliberate indifference to the excessive risk to Plaintiff's health in denying his kosher meal request, which would require him to violate his religion or to go without eating.

6. Supervisory liability claims under 42 U.S.C. § 1983 against Defendants Haywood, Free, Davis, and Morrow.

7. Ohio state-law claims under Article 1, § 7 of the Ohio Constitution against all Defendants for allegedly violating Plaintiff's rights of conscience, education, and the necessity of religion and knowledge when they denied his daily kosher meal request.

The Court notes that Plaintiff has provided the appropriate service documents for each Defendant.  (*See* Doc. 1-5 (summons forms); Doc. 1-6 (USM-285 forms)).  The Clerk of Court is **DIRECTED** to forward copies of the Complaint and appropriate service documents to the United States Marshal Service.

Thereafter, the United States Marshal Service is **DIRECTED** to serve copies of the Summons, the Complaint (Doc. 10), and this Order and Report and Recommendation on Defendants Chambers-Smith, Davis, Marcus, Haywood, Morrow, and Free.  The costs of service shall be advanced by the United States.

18

The undersigned **RECOMMENDS** as follows:

1. Plaintiff's official capacity claims be **DISMISSED with prejudice** to the extent that they seek to recover damages.

2. Plaintiff's conspiracy claims be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

3. Plaintiff's motion for a temporary restraining order (Doc. 3) be **DENIED**.

4. Plaintiff's motion for a preliminary injunction (Doc. 3) be **HELD IN ABEYANCE** until Defendants have been served and filed responses to the Complaint and the Motion for TRO/PI.

Plaintiff may file Objections to these recommendations in the manner described below.

He is reminded that he must keep this Court informed of his current address while this case is

pending.

**IT IS SO ORDERED AND RECOMMENDED**.


April 6, 2026                                                             */s/ Caroline H. Gentry*
Date                                                                       CAROLINE H. GENTRY
                                                                           United States Magistrate Judge


## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on a timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

19